UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD LEROY TIGHE, JR.,

        Petitioner,         Case No. 1:17-cv-342

v.         Honorable Janet T. Neff

LORI GIDLEY,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court will dismiss the petition for failure to raise a meritorious federal claim.

**Discussion**

I. <u>Factual allegations</u>

Petitioner Richard Leroy Tighe presently is incarcerated at the Central Michigan Correctional Facility. Pursuant to a plea agreement, Petitioner pleaded guilty in the Cass County Circuit Court to one count of assault with intent to commit sexual penetration, MICH. COMP. LAWS § 750.520g(1). On January 24, 2014, the circuit court sentenced Petitioner to a prison term of four to ten years, together with a fine of $500.00 and court costs of $500.00.

Although Petitioner entered a plea to the single count of assault with intent to commit sexual penetration, he was initially charged with four crimes: first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b, for the digital/vaginal penetration of his girlfriend's thirteen-year-old daughter; third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d, for the same incident; failure to register as a sex-offender, MICH. COMP. LAWS § 28.729; and violation of a school safety zone, MICH. COMP. LAWS § 28.735. Petitioner was charged as a habitual offender, second offense, MICH. COMP. LAWS § 769.10.

Along with the petition, Petitioner submitted excerpts of his medical record, the police report investigating Petitioner's crimes, the pre-sentence investigation report, and the sentencing transcript. Petitioner also submitted the entire transcript of his plea and correspondence from his trial and appellate counsel regarding their representation of Plaintiff. Based on these materials and Petitioner's arguments, it appears he does not deny the victim's accusations. Petitioner acknowledges he was at his girlfriend's house. His girlfriend went to bed. Petitioner and the victim stayed up watching wrestling on television. Petitioner and the victim began to wrestle. He acknowledges that in wrestling around he may have spread the victim's legs, but Petitioner remembers nothing else. He does not remember penetrating the victim's vagina with his finger. He

attributes his memory failure to his consumption of beer and the prescription medication Klonopin that evening.

Following his conviction and sentence, Petitioner filed an application for leave to appeal to the Michigan Court of Appeals, arguing that MICH. COMP. LAWS § 750.520g(1) does not allow the imposition of fines or costs. On October 20, 2014, the court of appeals denied leave to appeal for lack of merit in the grounds presented.[1]

Petitioner sought leave to appeal to the Michigan Supreme Court on October 14, 2015, arguing that the failure to disclose the fine and court costs rendered his guilty plea involuntary. On May 13, 2015, while his application for leave to appeal was pending, Petitioner filed a motion for relief from judgment in the trial court, raising the following issues: (1) his plea was involuntary because of his mental illness, memory issues, and the effects of his psychoactive medications; (2) his attorney rendered ineffective assistance of counsel by failing to inquire into the effects of the two psychiatric medications and failing to seek a competency hearing; and (3) the court violated due process by not conducting a competency evaluation, which would have shown Petitioner to be incompetent to enter the plea. The motion for relief from judgment was denied on May 15, 2015. Nearly simultaneously, on May 14, 2015, Petitioner filed a motion in the supreme court to amend his application for leave to appeal, apparently attempting to raise the same issues presented in the motion for relief from judgment. The supreme court issued an order on July 26, 2016, denying Petitioner's application for leave to appeal, as well as his motion to amend to add the new issues,

---

[1] It appears that Petitioner also filed a motion to withdraw his plea in the trial court, contending that, because the fines and costs were not disclosed to him in his plea agreement, he should be permitted to withdraw his plea under MICH. CT. R. 6.310(C) and the Due Process Clause, because all of the consequences of his plea were not disclosed to him. His motion was denied by the trial court.

but remanding the case to the trial court to reconsider Petitioner's issue regarding the assessment of court costs.

On August 9, 2016, Petitioner filed a second motion for relief from judgment in the Cass County Circuit Court, apparently raising the same issues. On August 25, 2016, the trial court held that the second motion for relief from judgment was both procedurally improper and meritless. In the same order, in response to the supreme court's order to remand, the court reconsidered and upheld the imposition of court costs.

Petitioner then filed his first petition in this Court on or about September 12, 2016. In his petition, Petitioner raised four grounds for relief:

    I.      Petitioner's right to due process was violated when he was not given an opportunity to withdraw the plea, because the trial court did not advise Petitioner of the possibility that a fine and costs could be imposed, rendering his plea involuntary.

    II.     Petitioner's plea was void because the trial court failed to hold a competency hearing.

    III.    Trial counsel was ineffective in failing to investigate Petitioner's mental health and the effects of Petitioner's psychoactive medications and in failing to seek a competency evaluation.

    IV.    Ineffective assistance of appellate counsel in failing to raise the other claims and failing to advise Plaintiff of his right to file a Standard 4 brief on appeal.

*Tighe v. Gidley*, No. 1:16-cv-1125 (W.D. Mich.) (Pet., ECF No. 1.)

The Court dismissed the petition because Plaintiff had failed to exhaust his state court remedies. *Tighe v. Gidley*, No. 1:16-cv-1125 (W.D. Mich.) (Op., ECF No. 5.) He never fairly presented his federal habeas issues to each level of the state courts.

Petitioner returned to the state courts. He filed an application for leave to appeal in the Michigan Court of Appeals. That court denied leave initially by order entered March 3, 2017

(Mich. Ct. App. Ord., ECF No. 1-2, PageID.157), and upon reconsideration by order entered March 21, 2017 (*Id.*, PageID.158).

Petitioner, instead of filing an application for leave to appeal in the Michigan Supreme Court, returned to this Court. He filed the instant petition on or about April 12, 2017. In this petition, Petitioner has abandoned his previous issue I, regarding court costs and fines, but raises issues II, III, and IV from his first petition. The issues remain unexhausted. Petitioner has never fairly presented them to the Michigan Supreme Court. The habeas statute bars this Court from granting Petitioner relief where he has failed to exhaust his claims in the state court. 28 U.S.C. § 2254(b)(1)(A). The Court is permitted to deny unexhausted claims though. 28 U.S.C. § 2254(b)(2). Rather than send Petitioner back to the state courts so that he might exhaust his state remedies and then return to this Court for a third time, the Court will consider and deny Petitioner's habeas claims because they are without merit.

II. Petitioner's competency

In his first habeas issue (Issue II above) Petitioner describes two distinct issues: first, he suggests that he was mentally ill and, thus, not competent to enter a plea; and second, because of his mental illness, the drugs he took, and the alcohol he drank, his capacity at the time he allegedly committed the crime was so diminished that he should not be held criminally responsible. Although Petitioner conflates the issues, they must be addressed separately.

A. Competence to enter a plea

A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner claims that his plea is invalid because it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty

made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it[.]" *Brady v. United States*, 397 U.S. 742, 749 (1970). Just as a criminal defendant who is incompetent may not be tried, *Godinez v. Moran*, 509 U.S. 389, 396 (1993), a defendant who is incompetent may not enter a plea of guilty, *see Brady*, 397 U.S. at 756.

The test for a defendant's competence to stand trial or plead is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 411 (1960); *see also Godinez*, 509 U.S. at 396; *United States v. Denkins*, 367 F.3d 537, 547 (6th Cir. 2004) (quoting *United States v. Ford*, 184 F.3d 566, 580 (6th Cir. 1999). A court's failure to hold a proper hearing where substantial evidence exists of the defendant's incompetency violates the defendant's due process right to a fair trial. *Mackey v. Dutton*, 217 F.3d 399, 411 (6th Cir. 2000). "[T]he standard . . . for requiring competency hearings prior to trial or the entry of a guilty plea is not merely whether extant evidence raises 'doubt' as to the defendant's capacity to stand trial, but rather whether evidence raises a 'bona fide doubt' as to a defendant's competence." *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004). In reaching its determination regarding competency, a court should consider evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion concerning his competence. *Mackey*, 217 F.3d at 411.

Here, Petitioner points to diagnoses of depression, anxiety, and even bipolar disorder as evidence of his incompetence. He also suggests that the drugs he took to address his mood disorders is evidence of, and indeed may have contributed to, his incompetence. Neither Petitioner's diagnosed mood disorders nor the drugs taken to address them, by themselves, raise a bona fide doubt about Petitioner's competence.[2] Petitioner fails to point to any record evidence of irrational behavior near the time of his plea that might have prompted the trial court to question Petitioner's competence. To the contrary, the plea colloquy suggests that Petitioner was entirely rational at the time of his plea, that he was able to consult with his attorney with a reasonable degree of understanding, and that he understood the proceedings against him. (Plea Tr., ECF No. 1-2, PageID.139-148.) Certainly Petitioner's trial counsel and his appellate counsel reached that conclusion despite Petitioner's insistence that he was not competent. Petitioner's trial counsel stated:

> I never was told that any of your medication affected your judgment. You always seemed alert, oriented and fully able to understand the proceedings and my advice. Nobody else including [your girlfriend] or the polygraph examiner, mentioned any clue that you seemed debilitated by medication or otherwise suffered from a condition that affected your judgment. I was never made aware of any "mental problems" that you were having other than depression/anxiety.

---

[2]*See, e.g., Johnson v. Michigan Parole Bd.*, No. 2:11-cv-11674, 2012 WL 6853535 at *7 (E.D. Mich. Dec. 6, 2012) (court concluded that reports disclosing that petitioner was bipolar and suffered from suicidal ideation did not raise a bona fide doubt as to his competence); *Lovejoy v. McKee*, No. 07-11729, 2011 WL 2490954 at *4-5 (E.D. Mich. June 22, 2011) ("Petitioner has been treated with Prozac and Lithium for bipolar disorder . . . [; h]owever, a person is not necessarily incompetent to stand trial simply because he is receiving psychiatric care or is mentally ill. . . [T]here was no evidence of irrational behavior in this case to alert the trial court that a competency hearing was necessary."); *Smith v. Bobby*, No. 3:09CV470, 2010 WL 749938 at *21 (N.D. Ohio, Feb. 22, 2010) (where petitioner suffered from bipolar disorder and attention deficit hyperactivity disorder, the court stated: "Not every manifestation of mental illness demonstrates incompetency to stand trial. Neither low intelligence, mental deficiency, nor the fact that a defendant has been treated with anti-psychotic drugs can automatically be equated with incompetence [citations omitted] Major depression, generalized anxiety, or borderline personality disorders do not necessarily show that a defendant is unable to consult with his or her lawyer or is incapable of understanding the proceedings against him or her."); *Hunter v. United States*, Nos. 2:06-cv-1014, 07-cv-1097, 2008 WL 53694 at 6-8 (S.D. Ohio, Jan. 2, 2008) (the fact that the defendant had been diagnosed and treated for bipolar disorder, mild schizophrenia, and post traumatic stress disorder, "'reveal[ed] no basis on which to find that the district court should have ordered a competency hearing.'").

(Sept. 23, 2014 Correspondence., ECF No. 1-2, PageID.82.) Appellate counsel reached the same conclusion:

> [T]he test for competency to plead guilty . . . requires a showing that a defendant has "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" Klonopin is often prescribed to ensure that a defendant continues to be competent throughout legal proceedings. The same is true of Lexapro. It is therefore impossible to argue that the medication rendered you incompetent to plead guilty. . . . The transcripts contain no indication that you did not understand the proceedings–in fact, Judge Dobrich questioned you and concluded that you had made a valid waiver of your trial rights. Further your trial attorney, Gary Stewart, expressed no difficulty in communicating with you regarding your case. For all of these reasons, I have concluded that we simply do not have sufficient grounds to raise a competency challenge.

(July 22, 2014 Correspondence, ECF No. 1-2, PageID.79-80) (citations omitted). In short, Petitioner presents no record evidence to support his claim that he was not competent to plead guilty. Accordingly, the trial court's determination that Petitioner's competence claim lacked merit is neither contrary to nor inconsistent with clearly established federal law. Petitioner is not entitled to habeas relief.

B. <u>Petitioner's capacity to commit the crime</u>

The other aspect of Petitioner's challenge regarding his competence centers on his capacity to commit the crime. Petitioner contends that the combination of medication and alcohol that allegedly prevented him from remembering the criminal acts also so diminished his capacity that he should not be held criminally responsible. Essentially, Petitioner argues the evidence against him was insufficient because he had a compelling involuntary intoxication defense.

Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including Petitioner's right to contest the factual merits of the charge against him. *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982). Any claim that the evidence against Petitioner was insufficient or that he had an ironclad defense was waived by his guilty plea.

### III. Ineffective assistance of trial counsel

Petitioner contends his counsel was ineffective because he did not investigate Petitioner's mental health, the effects of Petitioner's medications, or the defense of involuntary intoxication. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions

were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

### A. Failure to investigate the involuntary intoxication defense

Petitioner's challenge to counsel's effectiveness hinges in large part upon his claim that counsel failed to develop the involuntary intoxication defense. An understanding of the nature of that defense is helpful to an analysis of Petitioner's claim:

> "Involuntary intoxication is intoxication that is not self-induced and by definition occurs when the defendant does not knowingly ingest an intoxicating substance, or ingests a substance not known to be an intoxicant." *People v. Caulley*, 197 Mich. App. 177, 187; 494 NW2d 853 (1992) (quotations omitted). In the trial court, defendant argued that his use of clonazepam, when combined with alcohol, could "create an autonomic effect, which results in sleepwalking or sleep driving." It is undisputed that defendant voluntarily ingested both his medication and alcohol. However, Michigan has recognized that the use of prescription medications can cause involuntary intoxication under certain circumstances. *Id.* at 188. A defendant pursuing such a defense must establish three elements: (1) that the defendant did "not know or have reason to know that the prescribed drug is likely to have the intoxicating effect [,]" (2) that "the prescribed drug, not another intoxicant, ... caused the defendant's intoxicated condition[,]" and (3) "that as a result of the intoxicated condition, [the defendant] was rendered temporarily insane." *Id.*

*People v. Smith*, No. 322283, 2015 WL 5952074 at *3 (Mich. Ct. App. Oct. 13, 2015). The Michigan Court of Appeals has considered the defense in the circumstances presented here– where the defendant voluntarily consumed alcohol and then voluntarily consumed Klonopin. In rejecting the defense the court stated:

> Defendant nevertheless argues that he did not possess the specific intent to kill because he was involuntarily intoxicated during the incident. "[T]he defense of involuntary intoxication is part of the defense of insanity." *People v. Caulley*, 197

-10-

> Mich.App 177, 187; 494 NW2d 853 (1992). . . . [D]efendant does not offer any substantive evidence to suggest that he was involuntarily intoxicated at the time of his crimes. There is certainly no evidence that defendant became involuntarily intoxicated on alcohol. *See Caulley*, 197 Mich.App at 187 (citations omitted) ("Voluntary or self-induced intoxication is caused by substances which the defendant knows or ought to know have the tendency to cause intoxication and which he knowingly introduced or allowed to be introduced into his body").
>
> With regard to his intoxication on . . . Klonopin, there is similarly no evidence that defendant was entitled to an involuntary intoxication defense. Indeed, defendant does not dispute that he voluntarily ingested the Klonopin . . . in conjunction with alcohol. There was also testimony that defendant had previously taken the drug, and thus it cannot be shown that defendant did "not know or have reason to know that the prescribed drug is likely to have [an] intoxicating effect." *Id.* at 188. Moreover, defendant had ingested alcohol and, therefore, cannot show that "the prescribed drug . . . not another intoxicant . . . caused the defendant's intoxicated condition." *Id.* Lastly, defendant cannot establish that, as a result of his ingestion of . . . Klonopin, he was rendered legally insane at the time he shot Shirey. *Id.* In sum, even if defendant had properly raised the involuntary intoxication defense, there is no indication that he could prove that he was involuntarily intoxicated at the time of these crimes.

*People v. Osborn*, No. 316228, 2014 WL 5364052 at *2-3 (Mich. Ct. App. Oct. 21, 2014). Michigan statutes limit the defense where, as here, the defendant was under the influence of alcohol and drugs voluntarily consumed. MICH. COMP. LAWS § 768.21a(2) ("An individual who was under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his or her alleged offense is not considered to have been legally insane solely because of being under the influence of the alcohol or controlled substances.")

        Given Petitioner's history with alcohol and Klonopin, it would be difficult to show that Petitioner did not know, or at least have reason to know, of the potential for intoxicating effects. It would be similarly difficult to show that the intoxication followed from the Klonopin as opposed to the alcohol. Finally, even in this petition, Petitioner does not contend that he was rendered temporarily insane, i.e. that he could not distinguish right from wrong, by the intoxication. He only

claims he cannot remember what happened. That is not enough. Moreover, it would be difficult to convince a jury that Petitioner was rendered insane by alcohol and drugs and, for that reason, digitally penetrated the vagina of a thirteen-year-old girl, when this incident was not the first time Petitioner had perpetrated criminal sexual conduct on a teenage girl.

Put simply, the involuntary intoxication defense lacked merit.[3] Under these circumstances, it simply cannot be said that counsel acted unreasonably when he failed to develop the involuntary intoxication defense. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

B. <u>Failure to investigate Petitioner's competence to enter a plea</u>

For the same reason the trial court did not violate due process when it failed to order a competence evaluation, trial counsel did not render ineffective assistance when he failed to further investigate Petitioner's competence to enter a plea. Competence depends on a person's "present ability to consult with his lawyer with a reasonable degree of rational understanding – and . . . rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 411. Neither Petitioner's mood disorders nor the medications taken to treat them are sufficient to call into question his competence. *See* § II. *infra*. Petitioner offers nothing more in support of his argument.

---

[3]Indeed, in attempting to discourage Petitioner from seeking to withdraw his plea, appellate counsel explained that it was "very unlikely that [Petitioner would] succeed on . . . the defense of involuntary intoxication." (July 1, 2014 Corr., ECF No. 1-2, PageID.78.) Moreover, the trial court flatly rejected Petitioner's post-judgment motion claims, including his claim regarding involuntary intoxication, as meritless. (Ord., ECF No. 1-2, PageID.149-150) ("[T]his Court . . . did review the filings and finds that the arguments presented by the Defendant have no merit to justify the requested relief.") That conclusion is not unreasonable on this record. Critically, the trial court's conclusion that Petitioner's involuntary intoxication defense lacked merit is binding on this Court. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

The trial court's determination that Petitioner's argument is meritless is well-supported in the record and a reasonable application of clearly established federal law. Therefore, it was objectively reasonable for trial counsel to <u>not</u> pursue an incompetence claim on Petitioner's behalf.

      IV.      <u>Ineffective assistance of appellate counsel</u>

Finally, Petitioner complains that his appellate counsel was ineffective for two reasons: first, for failing to raise Issues II and III on Petitioner's direct appeal; and second, for failing to advise Petitioner of his right to file a *pro per* brief raising issues counsel was unwilling to raise.

      A.      <u>Failing to raise issues on appeal</u>

An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

There is no merit to Petitioner's claims that the trial court erred in not ordering an evaluation of Petitioner's competence or that trial counsel was ineffective for failing to investigate Petitioner's competence or raise the involuntary intoxication defense. The Sixth Circuit has held

that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). Accordingly, Petitioner has failed to demonstrate that his counsel rendered ineffective assistance.

### B. Failing to advise Petitioner regarding a standard 4 brief

Michigan Supreme Court Administrative Order 2004-6 sets forth minimum standards for indigent criminal appellate defense services, including the following:

> **Standard 4**
>
> When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims *in propria persona*. Defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion. Counsel shall also provide such procedural advice and clerical assistance as may be required to conform the defendant's filing for acceptability to the court. The defendant's filing *in propria persona* must be received by the Court of Appeals within 84 days after the appellant's brief is filed by the attorney . . . .

Mich. Adminstrative Order No. 2004-6. Petitioner submitted a *pro per* supplement to his attorney's application for leave to appeal. The supplement was rejected because it was not accompanied by a motion from appellate counsel. Petitioner does not identify the issues he was prevented from raising because of counsel's alleged failure. Presumably, however, Petitioner intended to raise the issues he raised in his motions for relief from judgment. Even if counsel were professionally unreasonable in failing to facilitate Petitioner's *pro per* filing, Petitioner has suffered no prejudice because the issues he sought to raise were meritless.

### Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id*.

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated: __April 27, 2017__          /s/ Janet T. Neff
                                   Janet T. Neff
                                   United States District Judge